## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

October 4, 2023

**<u>VIA CM/ECF</u>**

Re:   *Miller v. Mott, et al.*, No. 23-50004

Dear Counsel:

The debtor was a government contracting business that filed a chapter 11 bankruptcy case after the entry of an adverse judgment. The bankruptcy case was converted to one under chapter 7. The chapter 7 trustee initiated this lawsuit seeking to avoid and recover transfers that the debtor made to its principal equity holders and other defendants who are alleged to be their family members or entities that the equity holders owned or controlled. The First Amended Complaint, which is the operative document, asserts claims of intentional and constructive fraudulent conveyance, breach of fiduciary duty, the aiding and abetting of such breach, unlawful distributions, veil piercing, and unjust enrichment. The complaint also sought an injunction against the defendants' transferring or encumbering assets, a constructive trust, and an accounting. In addition, the complaint seeks to recover attorneys' fees.

Defendants move to dismiss certain counts under Civil Rule 12(b)(6) for failure to state a claim. Defendants are correct that constructive trust is a remedy rather

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 2 of 22

than a cause of action.  That claim (Count 12) will therefore be dismissed.  And defendants are similarly correct that the claim for attorneys' fees is misplaced, as none of the facts as alleged provides a basis for fee shifting.  The remaining counts, however, adequately allege facts that would, if established at trial, entitle the trustee to recover.  The balance of the motion to dismiss will therefore be denied.

## Factual and Procedural Background

The debtor, which was organized as a Delaware limited liability company, was a government contractor.[1]  Its members are Deborah Evans Mott; her son, Christopher Mott; her husband, John S. Maciorowski; and Steven Acosta.[2]  Deborah Mott holds a majority stake in the company.  Among other government contracts, the debtor was a party to a contract with FEMA under which it would supply water in support of disaster relief.[3]

The debtor entered into a consulting agreement with GPDEV, LLC and Simons Exploration, Inc. for the purchase and transport of water bottles.[4]  That agreement became the subject of litigation in the U.S. District Court for the Northern District of

---

[1] Debtor Team Systems International, LLC is referred to either as the "debtor" or as "TSI." The facts as set forth herein are based on the allegations in the First Amended Complaint ("FAC"), D.I. 37, which are taken as true for the purpose of a motion to dismiss.  When referring to Deborah and Christopher Mott, this letter opinion uses their first and last names in order to distinguish between the two.

[2] They are referred to jointly as the TSI members or debtor's members.

[3] FAC ¶ 2.

[4] *Id.* ¶¶ 32-38.

Florida.[5]  A jury awarded the plaintiff-creditors a judgment of almost $6.3 million.[6]

Soon after, the debtor filed a chapter 11 bankruptcy petition.[7]  The debtor's chapter

11 case was thereafter converted to one under chapter 7.   George Miller was

appointed as chapter 7 trustee.[8]

The trustee contends that during the four years before filing for bankruptcy,

Deborah Mott and Acosta caused the debtor to transfer millions of dollars to

themselves and to the other defendants in this case.[9]  The allegations include

transfers of $3 million and $50,000 from the debtor to Addy Road LLC and another

transfer of $250,000 to Deborah Mott directly.  An exhibit attached to the complaint

sets forth all of the transfers allegedly made by the debtor to the various defendants.[10]

The trustee initiated this adversary proceeding on January 10, 2023.[11]

Defendants moved to dismiss nine of the 13 counts as well as the demand for an

award of attorneys' fees.

---

[5] *Id.* ¶¶ 39-41.  This litigation is referred to as the "Florida Litigation."

[6] *Id.* ¶¶ 44-45.

[7] *Id.* ¶ 57.

[8] *Id.* ¶¶ 76-81.

[9] *Id.* ¶ 3.  Defendants are the TSI Members, certain of their family members, Addy Road LLC, and Team Systems International Southeast ("TSI Southeast").

[10] *Id.* Ex. A.

[11] The original complaint, D.I. 1, was amended on April 6, 2023.  The amended complaint included actions for actual and constructive fraudulent transfers, recovery of avoidable transfers, breaches of fiduciary duties, aiding and abetting those breaches, unlawful distributions, unjust enrichment, constructive trust, declaratory relief, injunctive relief, and a request for attorneys' fees.  *See* FAC.

## Jurisdiction

The trustee asserted claims for fraudulent conveyance. These claims arise under the Bankruptcy Code (§§ 544, 548 and 550) and are thus within the district court's "arising under" jurisdiction set out in 11 U.S.C. § 1334(b). The state law claims are within section 1334(b)'s "related to" jurisdiction because the resolution of those claims would have a "conceivable effect" on the bankruptcy estate. These cases have been referred to this Court under 28 U.S.C. § 157(a) and the February 29, 2012 Standing Order of Reference of the United States District Court for the District of Delaware.

## Analysis

At the motion to dismiss stage, the Court must determine whether the complaint's factual allegations are sufficient to state the claims alleged. The Federal Rules of Civil Procedure require only a "short plain statement of the claim showing that the pleader is entitled to relief."[12] Civil Rule 9 requires particularity when the plaintiff alleges fraud or mistake, but intent and knowledge may be alleged generally.[13] The purpose is to place defendants fairly on notice of the conduct charged in the case.[14]

Giving effect to the Supreme Court's decisions in *Iqbal* and *Twombly*, the Third Circuit has set forth a two-step analysis for a court's consideration of a motion to

---

[12] Fed. R. Civ. P. 8(a)(2) made applicable by Fed. R. Bankr. P. 7008.

[13] Fed. R. Civ. P. 9(b) made applicable by Fed. R. Bankr. P. 7009.

[14] *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 (D. Del. 2000).

dismiss.[15]  *First*, the court should separate the factual and legal elements of a claim, accepting all well-pleaded facts as true while disregarding any legal conclusions. *Second*, the court is to assess whether the facts alleged are sufficient to show a plaintiff has a plausible claim for relief.[16]

Generally, courts only consider what is within the four corners of a complaint on a motion to dismiss.[17]  An exception exists when a document is integral to or explicitly relied upon in the complaint.[18]  Those documents must be "undisputedly authentic" and attached as an exhibit to the motion to dismiss if the plaintiff's claims are based on that document.[19]

## I.    The trustee has standing to pursue actual and constructive fraudulent transfers actions pursuant to Section 544 (Counts 1 and 3).

The trustee asserts claims under the Delaware Uniform Fraudulent Transfer Act and Florida Uniform Fraudulent Transfer Act, invoking his authority under § 544(b) of the Bankruptcy Code.[20]  The defendants argue that the trustee lacks standing to pursue these claims, asserting that outside of bankruptcy, only the

---

[15] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

[16] *Fowler*, 578 F.3d at 210-211.

[17] *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993).

[18] *Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 342 (3d Cir. 2004). *In re Start Man Furniture, LLC*, No. 22-50317, 2023 WL 2717662 (Bankr. D. Del. Mar. 30, 2023).

[19] *Pension Ben.*, 998 F. 2d at 1196.

[20] 11 U.S.C. § 544(b); FAC ¶¶ 201-212, 222-231; D.I. 87 at 9.

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 6 of 22

members of a limited liability company or its assignees may assert derivative actions.[21]

The defendants' argument in this regard is unsuccessful. In fairness, there is some ambiguity in the caselaw regarding the bankruptcy implications of the provision of the Delaware LLC Act that limits the right to bring derivative actions on behalf of a Delaware limited liability company to its members or the company's assignees.[22] Specifically, passages in two decisions by judges of this Court, *HH Liquidation*, and *Citadel Watford*, might be read to suggest that the Delaware Supreme Court's decision in *Bax* (construing the Delaware LLC Act) curtails the power of a bankruptcy court to grant a creditors' committee standing to pursue an estate cause of action in chapter 11 when the debtor is a Delaware LLC.[23] A short discussion in a third decision, *Pennysaver*, could even be read to address the authority of a chapter 7 trustee to pursue claims for breach of fiduciary duty.[24]

But no matter how broadly, however, these decisions are read, they provide no reason to dismiss Counts 1 and 3. Even reading these decisions for all they may be worth, the implications of *Bax* and the Delaware LLC Act are limited to estate claims for breach of fiduciary duty. They have nothing at all to do with the authority of a

---

[21] D.I. 84 ¶¶ 44-51 (citing *CML V, LLC v. Bax*, 28 A.3d 1037 (Del. 2011)); *Pennysaver USA Publishing, LLC*, 587 B.R. 445 (Bankr D. Del. 2018); and *In re HH Liquidation LLC*, 590 B.R. 211 (Bankr. D. Del. 2018).

[22] *See* 6 *Del. C.* §§ 18-1001 & 18-1002; *Bax*, 28 A.3d at 1037.

[23] *See HH Liquidation*, 590 B.R. at 284-285; *In re Citadel Watford City Disposal Partners*, L.P., 603 B.R. 897, 904-905 (Bankr. D. Del. 2019).

[24] *See Pennysaver*, 587 B.R at 445.

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 7 of 22

trustee in bankruptcy (whether a chapter 7 trustee, a trustee appointed in a chapter 11 case, or a debtor in possession that has the duties of a trustee) to pursue a *creditor's* claim for fraudulent conveyance that § 544(b) of the Bankruptcy Code grants the trustee standing to pursue on behalf of the bankruptcy estate.  Nor does the Delaware LLC Act or the *Bax* decision interfere with the authority exercised by the trustee to pursue any cause of action that is not a derivative claim, but rather one that belonged to the debtor before the bankruptcy was filed and became property of the estate under § 541.

While the Court appreciates how one might construe the passages in the decisions described above to introduce complexity, in this Court's view, the controlling principles are fairly simple and familiar.  The *substance* of the rights held by a trustee (whether a chapter 7 trustee, a chapter 11 trustee, or a debtor in possession) are defined by non-bankruptcy law, typically state law.  That much is clear from *Board of Trade of City of Chicago v. Johnson*.[25]

It is true that the Delaware LLC Act authorizes the members of a Delaware LLC to disclaim fiduciary duties to one another and to the LLC itself.[26]  Accordingly, to the extent that *HH Liquidation* and *Citadel Watford* might be read to hold that

---

[25] 264 U.S. 1, 10 (1924) ("where the Bankrupt Law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts").  *See also Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

[26] *See* 6 *Del. C.* § 1101(e) ("A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for … breach of duties … including fiduciary duties … of a member").

under Delaware law, the debtors did not have valid claims for fiduciary duty against its members (because such duties were validly disclaimed under Delaware law), such that granting a creditors' committee standing to pursue that claim would be pointless and futile, this Court has no particular quarrel with such reasoning.

Defendants here, however, read *HH Liquidation* and *Citadel Watford* more broadly than that. On defendants' view, the *procedural* mechanism of granting a creditors' committee standing to pursue an estate cause of action is invalid in light of *Bax*. Even that broader reading of the decisions, however, would not help the defendants here. These counts are brought by a chapter 7 trustee under § 544, not by a creditors' committee. This case accordingly presents no occasion for this Court to offer a definitive determination regarding the correctness of those cases if they are to be read as the defendants suggest. But it does bear note that defendants' reading runs into serious obstacles.

The issue is that unlike the *substance* of an estate's rights, which is controlled by non-bankruptcy law, the *procedural* mechanism through which federal bankruptcy law allocates the authority to act on behalf of the bankruptcy estate – whether through the appointment of a trustee or through the device of granting a creditors' committee standing to pursue an estate cause of action – is a matter of federal law. It therefore follows from ordinary principles of federal supremacy that no principle of state law can operate to defeat the operation of the Bankruptcy Code.

Indeed, the Third Circuit was clear in the *Cybergenics* opinion, the leading authority in this jurisdiction for the right to assign standing to a creditors' committee

to pursue an estate cause of action on behalf of the chapter 11 estate, that this authority was implicit in the Bankruptcy Code.[27]  "[W]e are satisfied that derivative standing in this instance achieves Congress's policy goals."[28]  The court explained that the Bankruptcy Code contains a variety of procedural devices to give the bankruptcy court the power to ensure that the bankruptcy estate is being administered in the best interests of its stakeholders, including the power to terminate a debtor-in-possession's exclusive period to propose a plan, the power to appoint an examiner, the authority to appoint a chapter 11 trustee, and the power to convert the case to one under chapter 7.[29]  The Third Circuit viewed the power to grant derivative standing as an implied power that was less drastic than these express powers created by the Bankruptcy Code – but one that, just like these express powers, operated to "give effect to the policy of the legislature."[30]

Under ordinary principles of the supremacy of federal law, it is hard to see why the Delaware LLC Act ought to be permitted to frustrate this congressional purpose any more than state law could prevent the appointment of a chapter 11 trustee or an examiner.[31]  Accordingly, while the Court has no occasion to resolve the matter in this case, it does harbor reservations about the suggestion in *HH Liquidation* and

---

[27] *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 572 (3d Cir. 2003).

[28] *Id.*

[29] *Id.* at 579.

[30] *Id.* (internal quotation omitted).

[31] *See generally Arizona v. United States*, 567 U.S. 387, 399 (2012).

*Citadel Watford* that the Delaware LLC Act might operate to deprive a bankruptcy court of the authority described in *Cybergenics* to grant a committee derivative standing to pursue a potentially valid estate cause of action.

Recognizing, however, that even an attack on the right to grant a creditors' committee standing to pursue an estate cause of action would not advance their cause, the defendants take their argument a step further, arguing that the Delaware Supreme Court decision in *Bax* further deprives a trustee in bankruptcy from pursuing a claim under § 544.  Nothing in *Bax* does (or could) remotely support that argument.

In addition to having the power that a bankruptcy trustee has under § 541 to pursue estate causes of action (those the debtor held immediately before the bankruptcy filing) § 544(b)'s strong-arm power also authorizes the trustee to assert avoidance claims that, outside of bankruptcy, could have been asserted by individual creditors.[32]  In counts 1 and 3, the trustee seeks to assert claims that could have been asserted by individual creditors under Florida or Delaware law, under those states' adoption of the Uniform Fraudulent Transfer Act.[33]  The Delaware LLC Act's limitations on the power of creditors to bring state-law derivative actions thus has nothing at all to do with this issue.

---

[32] 11 U.S.C. § 544(b)(1) ("the trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim").

[33] 6 *Del. C.* § 1307(a)(1); Fla. Stat. § 726.108(1)(a); *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 854-855 (Del. Ch. 2020).

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 11 of 22

And even where the chapter 7 trustee brings claims that *are* estate causes of action (as is the case with several of the claims discussed below), *Bax* is still inapplicable, as nothing about that is *derivative*.  As a matter of federal law, a chapter 7 trustee stands in the shoes of the debtor's board with the authority to direct the affairs of the debtor.[34]  Thus, unlike a shareholder in a state-law derivative action or a creditors' committee that is given standing to pursue an estate claim in bankruptcy, a chapter 7 trustee pursuing an estate cause of action is not acting on a "derivative" basis.  The trustee is vested by federal law with the same powers to manage estate property (subject to court approval), including causes of action, as the company itself had before the bankruptcy.

The only case of which this Court is aware that suggests that *Bax* might have any bearing outside the context of committee standing in chapter 11 is *Pennysaver*. A passage in that decision does suggest that a chapter 7 trustee cannot assert a creditor's derivative action where the debtor is a Delaware LLC.  A derivative action, however, is a lawsuit in which a person or entity that does not otherwise have corporate law authority to act on behalf of a company seeks authority to bring an action on the company's behalf.[35]  But because a chapter 7 trustee *does* have the legal authority to act on behalf of the debtor, there is never a reason why a chapter 7

---

[34] *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (the trustee may sue on behalf of the corporation itself).

[35] *See Brookfield Asset Mg't v. Rosson*, 261 A.3d 1251, 1262-1263 (Del. 2021).

trustee would need to proceed in a derivative capacity.[36]  The motion to dismiss Counts 1 and 3 will therefore be denied.

## II.    The trustee properly pled constructive fraudulent transfers pursuant to Section 548 (Count 4).

The defendants moved to dismiss Count 4 for constructive fraudulent conveyance for failing sufficiently to plead that TSI was insolvent at the time of the transfers.[37]  Whether a debtor was insolvent at a point in time is "highly fact-specific and should be based on seasonable appraisals or expert testimony."[38]  Specific findings of insolvency are best determined following discovery and should not be generally decided on a motion to dismiss.[39]  The trustee is not required to present a fully proven case at the motion to dismiss stage, but only must allege facts that make his claims plausible.[40]  The complaint alleges that TSI was balance sheet insolvent no later than July 2019.[41]  With the lookback period under § 548 commencing on January 18, 2020,[42] this alleges that TSI was insolvent for that period.[43]

---

[36] *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3d Cir. 1989).

[37] D.I. 84 ¶¶ 19-20.

[38] *Pennysaver*, 587 B.R. at 459 (internal quotation omitted).

[39] *Id.*

[40] *See Iqbal*, 556 U.S. at 678.

[41] FAC ¶ 52 ("Based on the Debtor's books and records and information obtained by the Trustee through discovery…, the Debtor was balance sheet insolvent in that the sum of the Debtor's debts was greater than all of the Debtor's property, at a fair valuation…").

[42] The debtor filed its petition on January 18, 2022.  Section 548 applies to transfers that occur "within 2 years before the date of the filing of the petition". 11 U.S.C. § 548(a)(1).

[43] FAC ¶¶ 52-56, 237.

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 13 of 22

In moving to dismiss, the defendants point to the debtor's Schedules of Liabilities and Assets to show that the debtor was solvent in 2021. Among the assets listed were $21.375 million in accounts receivable.[44] A motion to dismiss, however, tests the validity of the complaint as pled. It is not the occasion to introduce new facts to establish a defense to the complaint's allegations. The question whether the estate is in fact entitled to collect the receivables in question has been addressed extensively in this bankruptcy case. A Rule 12(b)(6) motion, however, is not the occasion to resolve such a disputed question. For current purposes, it is sufficient to say that the complaint adequately alleges that the debtor was insolvent at the time of the transfers.

The defendants also offer another defense – that the transfers were made in satisfaction of an antecedent debt.[45] But this suffers from the same (obvious) flaw as the argument about the debtor's solvency – it relies on factual statements outside the complaint. It therefore provides no reason to dismiss the complaint.[46]

## III. The trustee gave proper notice to all defendants regarding actual fraudulent transfers (Count 2).

The trustee seeks to avoid transfers made to all ten defendants under § 548(a)(1)(A), alleging they were made with an intent "to hinder, delay, or defraud" creditors. In a claim for fraud, the standard from Rule 9(b) applies. The defendants

---

[44] Main Case D.I. 28 at 2.

[45] D.I. 84 ¶ 58.

[46] *Iqbal*, 556 U.S. at 674.

do not dispute that Deborah Mott and Acosta had proper notice of their roles in the alleged fraud, but contest that Christopher Mott, Maciorowski, Addy Road LLC and TSI Southeast are not fairly put on notice of the basis for their alleged wrongdoing.[47]

The fundamental problem with this argument, however, is that a claim for fraudulent conveyance does not turn on the mental state of the transferee. Actual fraudulent conveyance claims under § 548(a)(1)(A) turn on the intent of the debtor at the time of the transfer.[48] The motion to dismiss Count 2 will therefore be denied.

## IV. The trustee sufficiently pled the recovery of avoidable transfers (Count 5).

A bankruptcy trustee may recover property transferred from the debtor to an initial transferee or any immediate or mediate transferee to the extent that a transfer could be avoided under §§ 544 and 548, among others.[49] The parties agree that if Counts 1 through 4 survived a motion to dismiss, so would Count 5.[50] Because the motion to dismiss those counts will be denied, so too will be the motion to dismiss Count 5.

---

[47] D.I. 84 ¶ 61.

[48] *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 369 (Bankr. S.D. Tex. 2008); *In re Maxus Energy Corp.*, 641 B.R. 467, 513 (Bankr. D. Del. 2022).

[49] 11 U.S.C. § 550.

[50] D.I. 84 ¶¶ 25-26; D.I. 87 at 3, 20; *In MTE Holdings LLC*, No. 21-51255-CTG, 2022 WL 3691822, at *7 (Bankr. D. Del. Aug 24, 2022).

## V.    The breach of fiduciary duty claim may proceed because the facts, as pled, do not establish that the claim is untimely (Count 6).

The trustee alleges that defendants Deborah Mott and Acosta "willfully and repeatedly violated their fiduciary duties of care, loyalty, and good faith owed to the Debtor."[51]  The defendants do not contest that the trustee properly stated a claim for breaches of fiduciary duty but argue that the Delaware three-year statute of limitations bars the claims.[52]

A statute of limitations is an affirmative defense, and therefore only cognizable on a motion to dismiss if the facts establishing the applicability of the defense are clear from the allegations of the complaint.[53]  Delaware recognizes three doctrines that may toll the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling.[54]  If one of these exemptions applies, the limitations are tolled until such time as a person of ordinary intelligence and prudence would have learned facts that would have led them to discover the

---

[51] D.I. 87 at 20. *See* FAC ¶¶ 47-49 (detailing Deborah Mott's and Acosta's alleged breaches of fiduciary duty).

[52] D.I. 84 ¶¶ 63-66.

[53] *See In re Art Institute of Philadelphia, LLC*, No. 18-50627-CTG, 2022 WL 18401591, at * 7 (Bankr. D. Del. Jan, 12, 2022) ("As a general matter, a motion to dismiss measures the allegations set forth in the complaint against the elements of a plaintiff's *prima facie* case. The availability of a potential affirmative defense is not generally cognizable on a motion to dismiss.  There is an exception to that principle, however, for cases in which the availability of the affirmative defense is apparent based on the plaintiff's own factual allegations.") (footnotes omitted).  *See also In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 562 (Bankr. D. Del. 2008).

[54] *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 518-519 (D. Del. 2009).

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 16 of 22

injury.[55]  Under the doctrine of fraudulent concealment, the plaintiff must show that an affirmative act of concealment by the defendant prevented the plaintiff from gaining knowledge of the facts or there is a misrepresentation that is intended to put the plaintiff off the trail of enquiry.[56]

The complaint alleges that the defendants prevented the IRS from learning of its claim by failing to file tax returns.  It also alleges that the judgment creditors were deceived by the defendants' intentional misrepresentations in the Florida Litigation.[57]  This sufficiently alleges that the defendants led potential plaintiffs (who might have asserted derivative claims before bankruptcy) off the trail of enquiry. While the defendants contend that the Florida judgment creditors were on notice of their alleged misconduct because it was part of the Florida litigation,[58] the facts alleged in the complaint are at least not inconsistent with the proposition that the judgment creditors did not learn of the alleged misconduct until later.

While the actual facts, of course, may be disputed, it is inappropriate to resolve this type of factual dispute on a motion to dismiss.  The plaintiff is not barred by the statute of limitations on this motion because the complaint alleges that the defendants concealed their breaches and prevented creditors from learning of the alleged misconduct.  The motion to dismiss Count 6 will therefore be denied.

---

[55] *Fike v. Ruger*, 754 A.2d 254, 261 (Del. Ch. 1999).

[56] *Bridgeport*, 388 B.R. at 563.

[57] FAC ¶¶ 43-44, 68-69.  *See also* D.I. 87 at 21.

[58] D.I. 84 ¶ 68

## VI.    The claim for aiding and abetting the breach of fiduciary duty may proceed against all defendants (Count 7).

The trustee brought a claim for aiding and abetting the breach of fiduciary duty against all ten defendants.[59]  The defendants do not contest that the complaint adequately alleges that Deborah Mott and Acosta aided and abetted each other's breaches.  They contend only that the complaint fails to allege facts that would demonstrate that the other defendants knowingly participated in the alleged breaches.[60]

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege that a fiduciary duty existed, the duty was breached, that the defendant who was not a fiduciary knowingly participated in the breach, and that damages to the plaintiff resulted from the action of the fiduciary and nonfiduciary defendant.[61]

The element at issue—knowing participation—requires a showing that the defendant, in addition to having accepted the allegedly fraudulent conveyances, had actual or constructive knowledge of the alleged duty and breach at the time of the transfers.[62]  On a motion to dismiss, Rule 9(b) requires that knowledge and intent must only be "alleged generally."[63]  The defendants argue that the trustee makes no

---

[59] FAC ¶¶ 260-278.

[60] D.I. 84 ¶¶ 69-75.

[61] *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A. 2d 377, 386 (Del. Ch. 1990).

[62] *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 119 (Bankr. D. Del. 2016).

[63] Fed. R. Civ. P. 9(b).

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 18 of 22

specific allegations about the knowledge of Addy Road LLC, Christopher Mott,
Maciorowski, and TSI Southeast.[64]

   With respect to TSI Southeast and Addy Road, the complaint alleges that they
were controlled by Deborah Mott.[65]   That is a sufficient factual allegation that would
provide a basis to impute Deborah Mott's intent to those entities.

   The complaint also alleges specific facts that would permit an inference that
Christopher Mott and Maciorowski had actual or constructive knowledge of Deborah
Mott's and Acosta's alleged breaches of fiduciary duty.   The complaint alleges that
Christopher Mott is the son of Deborah Mott and a member of the debtor who holds
4% of the equity in the debtor and served as its Director of Business Development
and Sales.[66]   And it alleges that Maciorowski is Deborah Mott's husband, who resides
at the same address as Deborah Mott, and holds a 1% equity interest in the debtor.[67]
As members, they both were entitled to examine the debtor's books and records.
While the Court views this as a close question, for the purposes of a motion to dismiss,
where all reasonable inferences must be drawn in favor of the non-moving party,
these allegations are sufficient to allege that each defendant knowingly aided and
abetted Deborah Mott's and Acosta's breaches of fiduciary duty.

---

[64] D.I. 84 ¶ 70.

[65] FAC ¶ 277, 190.

[66] *Id.* ¶¶ 18, 30.

[67] *Id.* ¶¶ 19, 30.

## VII.    The First Amended Complaint sufficiently alleges unlawful distributions (Count 8).

When a Delaware LLC is insolvent, it may not make distributions to members other than for fair compensation for services.[68]  Defendants argue that this claim should be dismissed because it is repetitive of the claim for fraudulent conveyance. Unlike fraudulent conveyance, which only comes into the bankruptcy estate by virtue of § 544(b), the right to pursue an estate cause of action for unlawful distributions is estate property under § 541, as § 18-607(b) imposes liability "to the limited liability company."  Defendants' argument that the claim should be dismissed as redundant is incorrect, as there is no suggestion that the elements of the state law cause of action are identical to those of fraudulent conveyance.  And because (as discussed above) a chapter 7 trustee is given the authority to act on the debtor's behalf, the argument that the Delaware LLC Act prohibits the trustee's pursuit of the claim on the ground that it is an impermissible "derivative" action is wide of the mark.

## VIII.   The trustee sufficiently alleges unjust enrichment in the First Amended Complaint (Count 10).

Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[69]

---

[68] 6 *Del. C.* § 18-607(a).

[69] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citing *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 20 of 22

In moving to dismiss this count, the TSI member defendants argue that they were entitled to compensation pursuant to the TSI LLC Operating Agreement. But nothing in the complaint establishes such a right to compensation. Perhaps defendants will be able to defend against the unjust enrichment claim, on summary judgment or at trial, on this ground. But because the basis for this argument is not contained within the four corners of the complaint, it provides no reason to dismiss the complaint.[70]

## IX. Constructive trust is not a cause of action under Delaware law (Count 12).

The trustee sought the imposition of a constructive trust as a separate cause of action, or in the alternative, sought a constructive trust as an equitable remedy. The defendants sought the dismissal of this count because it is not a separate cause of action, citing the decision in *American Home Mortgage*.[71]

In response, the trustee argues that *American Home Mortgage* relies on Illinois state law in dismissing constructive trust as a cause of action.[72] But Delaware law is no different. Under Delaware law, constructive trust is not a cause of action but "a remedy to correct the unlawful vesting, or assertion of, legal title."[73] Accordingly, just

---

[70] *See supra*, Part V.

[71] *American Home Mortg. Holding*, 458 B.R. 161, 171-72 (Bankr. D. Del. 2011).

[72] *American Home Mortg.*, 458 B.R. at 171-72; *Fujisawa Pharmaceutical Co. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill.1998); *Senese v. Climatemp, Inc.*, 222 Ill.App.3d 302 (Ill. 1st Dist. 1991).

[73] *Triton Const. Co. Inc. v. Eastern Shore. Elec. Servs. Inc.*, 2009 WL 1387115 (Del. Ch. May 18, 2009). *See also RCS Creditor Trust v. Schorsch*, 2018 WL 1640169 (Del. Ch. Apr. 5, 2018).

as in *American Home Mortgage*, the Court will dismiss the separate count for the imposition of a constructive trust.  Doing so does not, however, foreclose the trustee from seeking this remedy if the facts, as proven, justify its imposition.

## X.    The complaint's separate request for attorneys' fees will be dismissed.

The trustee additionally sought reasonable attorneys' fees and expenses incurred in connection with investigating, filing, and prosecuting this action.  The trustee argues that Delaware common law allows for fee shifting for "egregious conduct, such as forcing a plaintiff to file suit to secure a clearly defined and established right, unnecessarily prolonging or delaying litigation, falsifying records, or knowingly asserting frivolous claims or defenses."[74]

The defendants counter that the applicable principle here is the American Rule under which parties are required to bear their own litigation expenses regardless of the outcome, absent express statutory authorization to the contrary.[75]   The defendants are correct, generally, that under federal law and in bankruptcy, fees are not recoverable by the prevailing party absent statutory authorization.[76]

While Delaware law (consistent with the American Rule more broadly) provides an exception for circumstances in which there is bad faith conduct, the law

---

[74] D.I. 87 at 24-25; *McGowan v. Empress Enter., Inc.*, 791 A.2d 1 (Del. Ch. 2000); *Pettry v. Gilead Scis., Inc.*, No. CV 2020-0132-KSJM, 2021 WL 3087027, at *1 (Del. Ch. July 22, 2021) (cleaned up) (awarding fees).

[75] D.I. 84 ¶¶ 82-83. *In re Draw Another Circle*, 602 B.R. 878, 906 (Bankr. D. Del. June 13, 2019).

[76] *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).

Case 23-50004-CTG    Doc 101    Filed 10/04/23    Page 22 of 22

*Miller v. Mott, et al.*, No. 23-50004
October 4, 2023
Page 22 of 22

is clear that this exception is focused on litigation misconduct.[77]  A fee award must

typically be traceable to conduct taken in litigation, not the underlying conduct that

gives rise to the cause of action.  And even to the extent cases such as *McGowan v.*

*Empress Ent. Inc.*[78] might be read to suggest a broader right to fee shifting where

there is a violation of a clearly delineated right (there, the defendant interfered with

the plaintiff's clearly established right to review corporate books and records), the

allegations of the complaint here do not allege a violation of a right of similar

specificity.  The causes of action asserted against the defendants do not permit fee-

shifting so, without additional statutory authority, the Court will grant the motion

on these grounds.

## Conclusion

For the reasons set forth above, the motion to dismiss Counts 1-8, and 10 is

denied.  The motion to dismiss Count 12 and the claim for attorneys' fees is granted.

The parties are directed, within 7 days, to settle an appropriate order.


Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[77] *Johnston v. Arbitrium (Cayman Islands) Handels* AG, 720 A.2d 542, 545-546 (Del. 1998); *RBC Capital Markets v. Jervis*, 129 A.3d 816, 877 n.260 (Del. 2015) (listing cases establishing this rule).

[78] 791 A.2d at 1.